IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CASSANDRA LEE MORROW                                              PLAINTIFF

V.                                          CIVIL ACTION NO. 3:13CV276-NBB-SAA
                                                                 LEAD CASE
KROGER LIMITED PARTNERSHIP I
and MICKEY MANCINI                                               DEFENDANTS

CONSOLIDATED WITH

SAVANNAH BARRON                                                   PLAINTIFF

V.                                          CIVIL ACTION NO. 3:13CV305-NBB-SAA

KROGER LIMITED PARTNERSHIP I
and MICKEY MANCINI                                               DEFENDANTS

MEMORANDUM OPINION

Presently before the court is Defendant Mickey Mancini's motion to dismiss for failure to state a claim. Upon due consideration of the motion, response, complaint, and documents attached to the motion, the court is ready to rule.

FACTS AND PROCEDURAL BACKGROUND

Plaintiff Cassandra Morrow worked for Kroger, a defendant in this action, as a deli clerk in the Hernando, Mississippi store starting in January 2010. Morrow worked under the meat market manager, Mickey Mancini, the other defendant in this action. Morrow alleges that Mancini began sexually harassing her in the summer of 2011. The alleged harassment consisted of inappropriate comments, calling and texting after work hours, attempts to kiss Morrow, and other improper touching.

Savannah Barron, another plaintiff in this action, was initially hired by Kroger on September 22, 2011, as a part-time seafood clerk in the Hernando store. She was subsequently

1

trained to handle meats and began working under Mancini. Barron alleges that Mancini began sexually harassing her soon after she began working at Kroger. The alleged harassment consisted of inappropriate comments, groping, and texting and calling after hours.

On August 10, 2012, Morrow and Barron met with Kroger's human resources department and filed an internal complaint against Mancini for the alleged harassment. The following day, Kroger suspended Mancini and began investigating Plaintiffs' claims. Human resources interviewed all witnesses that Plaintiffs stated would corroborate their allegations. After eleven days the investigation was completed, and human resources met with Plaintiffs to discuss the results. Human resources informed Plaintiffs that though some of Mancini's actions had been found to be inappropriate, they did not rise to the level of actionable sexual harassment because most of Plaintiffs' allegations could not be corroborated. Mancini did, however, receive a constructive advice,[1] an eleven-day unpaid suspension, and a warning that if he were to engage in similar conduct in the future, his employment would be terminated. Kroger provided Plaintiffs with three options: 1) remain in the meat department under Mancini, 2) transfer to another department within the Hernando store, or 3) transfer to another Kroger store. Plaintiffs both chose to stay in the meat department under Mancini.

Plaintiffs allege that after the investigation was completed they endured a hostile work environment. Morrow alleges that Mr. Akbary, the store manager, verbally reprimanded her and criticized her in front of customers. Morrow, however, concedes that the reprimands came as a result of her violating Kroger policy. Barron alleges that Mancini acted in such a hostile manner towards her that in September 2012 she chose to transfer to the Kroger store located in Olive

---

[1] A constructive advice is a term used by Kroger when it formerly writes up an employee for misconduct and is, consequently, a form of punishment.

Branch, Mississippi. Morrow alleges that Akbary's actions were intolerable, and she consequently resigned in December 2012.

On November 8, 2013, Morrow filed a complaint in this court against Kroger Limited Partnership I and Mickey Mancini. Barron did the same on December 18, 2013. Plaintiffs' allegations against Kroger include sexual harassment, retaliation, sex discrimination, and constructive discharge. Plaintiffs assert only a claim for intentional interference with contract relations against Mancini. On August 12, 2014, Plaintiffs' motion to consolidate these two cases was granted. Defendant Mickey Mancini filed this motion to dismiss for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement… showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). For a plaintiff to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A motion to dismiss for failure to state a claim tests both the legal and factual sufficiency of a plaintiff's complaint. *Id.* at 679. Though motions to dismiss are "viewed with disfavor and [are] rarely granted," the burden rests on the plaintiff to prove her claim should go forward. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 497 (5th Cir. 2000).

To meet her burden, a plaintiff cannot rest merely on "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a plaintiff must demonstrate that facts pleaded allow the court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. In deciding whether a plaintiff has met her burden, the court "must accept as true all of the

3

allegations contained in a complaint," except for those allegations which are mere legal conclusions. *Ashcroft*, at 678. Any legal conclusions in a complaint must be supported by factual allegations. *Id.* Ultimately, plaintiff's complaint must "nudge his claims… across the line from conceivable to plausible." *Id.* at 680 (quoting *Twombly*, 550 U.S. at 547).

Typically, when deciding a 12(b)(6) motion to dismiss, the court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins*, 224 F.3d at 498. The Fifth Circuit however has approved the practice of courts considering documents attached to the motion to dismiss. *Id.* at 498-99.

## ANALYSIS

Defendant Mancini argues that dismissal of Plaintiffs' claims for intentional interference with contract relations is appropriate because these claims are preempted by the Labor Management Relations Act ("LMRA"). Section 301 of the LMRA "provides the requisite jurisdiction and remedies" for such claims. *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994). The LMRA's preemptive effect is the same whether a claim sounds in tort or contract. *Id.*

Preemption of state law claims occurs when those claims substantially depend on an "analysis of an agreement between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). More specifically, if a state law claim is "inextricably intertwined with the consideration of the terms of the labor contract" or if resolution of the state law claim would "require interpretation of the collective bargaining agreement," the state law claim is preempted. *Thomas*, 39 F.3d at 616-17. Plaintiffs' employment with Kroger is governed by a collective bargaining agreement ("CBA") entered into between Kroger and the United Food & Commercial Workers Union, Local 1529. Because the CBA is the only contract

governing Plaintiffs' employment with Kroger, it follows that Plaintiffs' claim for intentional interference with a contract must refer to the CBA.

In determining whether Plaintiffs' state law claim is preempted, the court must look to Mississippi law. Under Mississippi law, a claim for tortious interference with a contract can only arise when a person causes another to breach a contract with a third person. *Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998). To establish such a claim, a plaintiff must plead and prove the following elements: "1) that the acts were intentional and willful, 2) that they were calculated to cause damage to the plaintiff in their lawful business, 3) that they were done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the defendant, and 4) that actual damage and loss resulted." *Hollywood Cemetery Ass'n v. Board of Mayor and Selectmen of City of McComb City*, 760 So. 2d 715, 719 (Miss. 2000). A plaintiff must also prove that an enforceable obligation existed and that the contract would have been performed but for the alleged interference. *Id.*

For Plaintiffs to prevail on a claim for tortious interference with a contract, they must show that the contract, here the CBA, would have been performed but for the alleged interference by Mancini. Further, Plaintiffs must show that the contract was in fact breached. Because the court will not be able to determine whether either of these requirements actually occurred without looking to the CBA and its terms and because Plaintiffs' claims are "inextricably intertwined with the consideration of the terms" of the CBA, Plaintiffs' claims for intentional interference with contractual relations is preempted by the LMRA.

Plaintiffs make a strong argument that their claims are not preempted, but that argument is ultimately unpersuasive. Plaintiffs assert that the conduct complained of, that is the alleged sexual harassment, is not condoned by the CBA, and as a result, the LMRA would not preempt

their claim. In support of their position, Plaintiffs point to case law in which certain state law claims have been determined not to be preempted when the conduct complained of is sexual harassment. *See Hirras v. National R.R. Passenger Corp.*, 44 F.3d 278 (5th Cir. 1995); *Smith v. Houston Oilers, Inc.*, 87 F.3d 717 (5th Cir. 1996). Plaintiffs' reliance on these cases, however, is misplaced. The plaintiffs in these cases asserted state law claims for intentional infliction of emotional distress. *Hirras*, 44 F.3d 278; *Smith*, 87 F.3d 717. The court's analysis in both of these aforementioned cases was specific to claims for intentional infliction of emotional distress only. Plaintiffs have not directed the court to any case law applying this same analysis outside the context of claims for intentional infliction of emotional distress. Plaintiffs in the present case have not asserted a claim for intentional infliction of emotional distress; thus this particular rationale would not apply. Plaintiffs' claims are, consequently, preempted by the LMRA.

The LMRA does not provide employees with a claim against a third party for tortious interference with a contract. *See Fleming v. United Parcel Serv., Inc.*, 2005 WL 3240690 (S.D. Miss. 2005); *Freeman v. Duke Power Co.*, 114 F. App'x 586 (4th Cir. 2004). Furthermore, in accordance with Supreme Court precedent, an employee wishing to bring a claim dependent on a collective bargaining agreement must first utilize any grievance procedures set forth by the agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564 (1976). The CBA at issue here contains an arbitration and grievance procedure which applies to any and all disputes arising out of the agreement and acts as the final and exclusive remedy for such claims. Plaintiffs have presented no evidence demonstrating their utilization of this procedure. Because Plaintiffs have not exhausted their remedies under the CBA and because the LMRA fails to provide employees with a claim for tortious interference with contract relations against a supervisor, Plaintiffs have no plausible claim against Mancini.

## CONCLUSION

For the foregoing reasons, the court finds that Defendant's motion to dismiss for failure to state a claim is well taken and should be granted. A separate order in accord with this opinion shall issue this day.

This, the 25th day of March, 2015.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**