IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

CASSANDRA LEE MORROW                                                                      PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:13CV276-NBB-SAA
                                                                                         LEAD CASE
KROGER LIMITED PARTNERSHIP I
and MICKEY MANCINI                                                                        DEFENDANTS

CONSOLIDATED WITH

SAVANNAH BARRON                                                                           PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:13CV305-NBB-SAA

KROGER LIMITED PARTNERSHIP I
and MICKEY MANCINI                                                                        DEFENDANTS

MEMORANDUM OPINION

Presently before the court is Defendant Kroger's motion for summary judgment. Upon due consideration of the motion, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

FACTS AND PROCEDURAL BACKGROUND

Plaintiff Cassandra Morrow worked for Kroger, a defendant in this action, as a deli clerk in the Hernando, Mississippi store starting in January 2010. Morrow worked under the meat market manager, Mickey Mancini, the other defendant in this action. Morrow alleges that Mancini began sexually harassing her in the summer of 2011. The alleged harassment consisted of inappropriate comments, calling and texting after work hours, attempts to kiss Morrow, and other improper touching.

Savannah Barron, another plaintiff in this action, was initially hired by Kroger on September 22, 2011, as a part-time seafood clerk in the Hernando store. She was subsequently

1

trained to handle meats and began working under Mancini. Barron alleges that Mancini began sexually harassing her soon after she began working at Kroger. The alleged harassment consisted of inappropriate comments, groping, and texting and calling after hours.

On August 10, 2012, Morrow and Barron met with Kroger's human resources department and filed an internal complaint against Mancini for the alleged harassment. The following day, August 11, 2012, Kroger suspended Mancini and began investigating Plaintiffs' claims. Human resources interviewed all witnesses that Plaintiffs stated would corroborate their allegations. The investigation was completed eleven days later, and human resources met with Plaintiffs to discuss the results. Human resources informed Plaintiffs that though some of Mancini's actions had been found to be inappropriate, they did not rise to the level of actionable sexual harassment because most of Plaintiffs' allegations could not be corroborated. Mancini did, however, receive a constructive advice,[1] an eleven-day unpaid suspension, and a warning that if he were to engage in similar conduct in the future, his employment would be terminated. Kroger provided Plaintiffs with three options: 1) remain in the meat department under Mancini, 2) transfer to another department within the Hernando store, or 3) transfer to another Kroger store. Both Plaintiffs chose to stay in the meat department under Mancini.

Plaintiffs allege that after the investigation was completed they endured a hostile work environment. Morrow alleges that Mr. Akbary, the store manager, verbally reprimanded her and criticized her in front of customers. Morrow, however, concedes that the reprimands came as a result of her violating Kroger policy. Barron alleges that Mancini acted in such a hostile manner towards her that in September 2012 she chose to transfer to the Kroger store located in Olive

---

[1] "Constructive advice" is a term used by Kroger when an employee is formally written up for misconduct and is, therefore, a form of punishment.

Branch, Mississippi. Morrow alleges that Akbary's actions were intolerable, and she consequently resigned in December 2012.

On November 8, 2013, Morrow filed a complaint in this court against Kroger Limited Partnership I and Mickey Mancini. Barron followed on December 18, 2013. Plaintiffs' allegations against Kroger arise under Title VII of the Civil Rights Act of 1964 and include sexual harassment, retaliation, sex discrimination, and constructive discharge. Plaintiffs assert only a claim for intentional interference with contract relations against Mancini. On August 12, 2014, Plaintiffs' motion to consolidate these two cases was granted. Defendant Kroger subsequently filed this motion for summary judgment.

## STANDARD OF REVIEW

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Courts have placed the burden upon the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a movant has made this showing, the burden then shifts to the non-movant. *Id.* at 324. The non-movant must then demonstrate an existence of specific facts showing a genuine issue proper for trial. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A motion for summary judgment may be granted only if the court finds "no *genuine* issue of *material* fact" has been presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Substantive law will identify which facts are material." *Id.* A fact is material if it "might affect

the outcome of the suit," and any facts which would be irrelevant to the potential outcome are immaterial. *Id.* Not only must a fact be material to avoid summary judgment, there must also be a genuine dispute about a material fact. *Id.* A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* The Supreme Court has made it clear that "at the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. The inquiry performed by the trial judge is a "threshold inquiry" of whether a trial is needed. *Id.* at 250. "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

ANALYSIS

Defendant contends that all of Plaintiffs' claims should be dismissed for the following reasons. First, Defendant argues that Plaintiffs cannot establish a claim for sexual harassment because Mancini is not a supervisor under Title VII; furthermore, Kroger took prompt action to prevent and correct any harassment once it was made aware of the allegations. Next, Defendant argues that Plaintiffs cannot establish a retaliation claim because they cannot show that they were subject to an adverse employment action. Defendant additionally contends that Plaintiffs cannot establish a claim for sex discrimination nor a claim for failure to promote because Morrow was

4

not qualified for the position of market assistant, and Barron did not suffer an adverse employment action. And finally, Defendant asserts that Morrow cannot establish a claim for constructive discharge because she was reprimanded only for undisputed violations of Kroger policy and because a reasonable person in her position would not have felt compelled to resign.

*Plaintiffs' Claims for Sexual Harassment*

Under Title VII, an employer's liability for workplace harassment will depend on the status of the harasser — that is, whether the harasser is a supervisor or co-worker. *E.E.O.C. v. Boh Bros. Constr. Co., LLC*, 731 F.3d 444, 452 (5th Cir. 2013). An employee is a supervisor when that employee has been given power to take tangible employment actions against the victim. *Vance v. Ball State University*, 133 S. Ct. 2434, 2443 (2013). The term "tangible employment action" has been narrowly defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

Defendant asserts that Mancini is not a supervisor under Title VII. The court agrees. Mancini, though the immediate "supervisor" of Plaintiffs, does not have the requisite authority that would qualify him as a Title VII supervisor. Mancini's responsibilities were limited to overseeing the day-to-day operations in the meat department in the Hernando store. Mancini was not empowered by Kroger to hire or fire employees; nor could he promote, demote, or transfer employees. Plaintiffs argue that Mancini was a supervisor by pointing to an alleged comment made by Mancini at a company picnic. Plaintiffs allege that Mancini commented to his son "Don't I have two very pretty wrappers? You can tell who does the hiring." Plaintiffs argue that this statement implies that Mancini had hiring authority. This statement, however, has not

5

been corroborated by any other witnesses and, even if it had been, would not be sufficient to create a genuine issue of material fact as to whether Mancini is a supervisor under Title VII. Plaintiffs also argue that Mancini had the ability to write them up and had some input on new hires within the meat department. Plaintiffs, however, have failed to present any evidence to support these contentions. The court, therefore, concludes that Mancini does not qualify as a supervisor under Title VII.

When the harasser is a co-worker, a sexual harassment claim against an employer is analyzed under the hostile work environment framework. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). To establish a hostile work environment claim, a plaintiff must prove the following five elements: "1) the employee belonged to a protected class; 2) the employee was subject to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a 'term, condition, or privilege' of employment; and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Id.*

Kroger asserts it cannot be liable for the alleged harassment because Plaintiffs cannot establish the fifth element of a hostile work environment claim. The court agrees. According to Plaintiffs, the alleged harassment of Morrow began in the summer of 2011, and the alleged harassment of Barron began soon after September 2011. Plaintiffs, however, did not report the conduct until almost a year later on August 10, 2012. The following day, Kroger suspended Mancini and commenced an investigation. Further, Plaintiffs concede that after the investigation was completed, Mancini's inappropriate comments and actions ceased. The court concludes that Kroger was not aware of the alleged harassment until almost a year after it began; furthermore, once Kroger was made aware of Mancini's conduct, it took prompt remedial action, and the

6

harassment stopped. Plaintiffs' claim for sexual harassment is, therefore, not viable and must be dismissed.

*Plaintiffs' Claims for Retaliation*

To make out a prima facie case for retaliation, a plaintiff must show that: "1) she engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link exists between the protected activity and the adverse employment action." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007). An "adverse employment action" has been interpreted to mean "materially adverse," such that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Defendant argues that Plaintiffs cannot show that an adverse employment action occurred after their internal complaints were filed. The court agrees. Morrow contends that she suffered an adverse employment action because Akbary verbally disciplined her for her admitted violations of Kroger policy, and he threatened to write her up several times. Barron claims that she suffered an adverse employment action because Mancini acted in a hostile manner towards her, refusing to speak to her except for the few times he allegedly raised his voice at her. The Fifth Circuit has held that criticism, oral threats, abusive remarks, and threats of termination do not rise to the level of an adverse employment action. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000). Further, "allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions." *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008). These allegations, therefore,

7

do not rise to the level of an adverse employment action, and Barron, consequently, cannot make out a prima facie case for retaliation.

Morrow additionally contends that she was constructively discharged and that this is considered an adverse employment action. Because Morrow does not separately argue her claim for constructive discharge, the court will conduct its analysis of the constructive discharge claim within the retaliation context.

Plaintiff is correct in her assertion that a proven constructive discharge can constitute an adverse employment action. *See Landgraf v. USI Film Products*, 968 F.2d 427, 432 (5th Cir. 1992). To succeed on a constructive discharge claim, the plaintiff must show "working conditions … so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Nassar v. Univ. of Texas Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012). A plaintiff is required to demonstrate a "greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011). In determining whether a reasonable employee would have felt compelled to resign, courts consider the following events: 1) demotion; 2) reduction in salary; 3) reduction in job responsibility; 4) reassignment to menial or degrading work; 5) reassignment to work under a younger supervisor; 6) badgering harassment or humiliation by the employer calculated to encourage the employee's resignation; or 7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556. 566 (5th Cir. 2001).

Morrow contends that she suffered "badgering harassment or humiliation by the employer calculated to encourage the employee's resignation." Morrow argues that the verbal reprimands and criticism she suffered from Akbary rose to this level. The court, however,

8

disagrees. Akbary reprimanded Morrow only after her admitted violations of Kroger policy by wearing a jacket over her Kroger shirt on the sales floor and for being on her cell phone on the sales floor. Furthermore, as mentioned above, a constructive discharge claim requires a heightened severity and pervasiveness than that required to demonstrate a hostile work environment claim. A reasonable person in Morrow's position would not have felt compelled to resign merely because her supervisor requires that she abide by company policy and perform her duties accordingly. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 343 (5th Cir. 2005) (holding that the plaintiff failed to state a claim for constructive discharge when employer was only enforcing company policy). Plaintiff's allegations fail to meet the required heightened standard for a claim of constructive discharge, and as a result the claim must fail. Morrow cannot show that she suffered an adverse employment action and, consequently, cannot make out a prima facie case for retaliation.

*Plaintiffs' Claims for Gender Discrimination*

Plaintiffs argue that Kroger has discriminated against them on the basis of their sex. Morrow alleges that Kroger unlawfully discriminated against her because Defendant chose to promote Steve Thompson, a male, to the position of market assistant rather than promote Plaintiff. To establish a prima facie case for failure to promote, a plaintiff must show: "1) she was not promoted; 2) she was qualified for the position she sought; 3) she was within the protected class at the time of the failure to promote; and 4) either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her sex." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179 (5th Cir. 1999).

Defendant argues that Morrow cannot prevail on her claim because she was not qualified for the position of market assistant. According to Kroger policy, a market assistant is required to

9

know all aspects of the meat department and must have training and experience to cut meat on the power saw. The required training is fulfilled by attending Kroger's "butcher school." Morrow undisputedly never attended the aforementioned butcher school and had little experience using the power saw to cut meat – only that shown her by Mancini.

It is well-settled in the Fifth Circuit that "to establish a prima facie case, [the plaintiff] need only make a very minimal showing." *Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). Viewing the underlying facts in the light most favorable to Plaintiff, the court finds that Morrow has raised a genuine issue of material fact as to whether she was qualified for the position of market assistant. This finding, however, does not end the inquiry.

Once a plaintiff has demonstrated a prima facie case for gender discrimination, the burden then shifts to the employer to demonstrate a legitimate nondiscriminatory reason for failure to promote. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). Defendant's proffered legitimate nondiscriminatory reason is that Thompson, the employee who was promoted to market assistant, was better qualified than Morrow. "The promotion of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory." *Jefferies v. Harris County Community Action Ass'n*, 693 F.2d 589, 589 (5th Cir. 1982). Thompson, the successful applicant, had attended the requisite butcher school and had five years of experience as a trained butcher. He was clearly more qualified than Plaintiff, who had never been to the butcher school and had only used the power saw on a few occasions. Defendant, therefore, has met its burden of showing that it had a legitimate nondiscriminatory reason for promoting Thompson over Plaintiff.

Once an employer has met its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell*, 482 F.3d at 412.

Morrow first argues that Defendant's proffered reason is merely a pretext. In support of this contention, Morrow asserts that she wished to go to the butcher school to be trained but that Kroger would not send her. Even if this contention were enough to raise a genuine issue of material fact, Morrow has failed to present any evidence to corroborate this assertion aside from her own self-serving declaration. Morrow also makes an argument that her gender was a motivating factor in Defendant's decision not to promote her to the market assistant position. Morrow asserts "all of the market assistants at the Kroger store in Hernando have been males going back for several years." Morrow rests her contention that her gender was a motivating factor on this one statement with no corroborating evidence. The court finds that Morrow has failed to rebut Defendant's proffered legitimate nondiscriminatory reason for its decision not to promote her. Morrow's claim for gender discrimination, therefore, fails.

Barron alleges that she was unlawfully discriminated against and asserts that this is demonstrated by the alleged hostile work environment she endured, causing her to subsequently transfer to another store. Barron, however, requested the aforementioned transfer. Barron's allegations fail to meet the standards for establishing a prima facie case for unlawful gender discrimination. To establish such a claim, a plaintiff must satisfy the following elements: 1) she is a member of a protected class; 2) she is qualified; 3) she experienced an adverse employment decision; and 4) she was replaced by someone outside the protected class or she was treated less

favorably than employees outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Defendant argues that Barron's claim fails because she cannot establish the third element -- that is, she did not experience an adverse employment decision. A requested voluntary transfer which "does not involve a demotion in form or substance" does not constitute an adverse employment decision. *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 396 (5th Cir. 2008). Barron does not allege that her transfer to the Olive Branch store resulted in any sort of demotion. Accordingly, Barron's voluntary decision to transfer to another store does not constitute an adverse employment decision, and she, therefore, cannot establish a claim for gender discrimination.

## CONCLUSION

For the foregoing reasons, the court finds that Defendant's motion for summary judgment is well taken and should be granted. A separate order in accordance with this opinion shall issue this day.

This, the 25th day of March, 2015.

/s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**